# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# MILWAUKEE DIVISION

| | |
|---|---|
| KRISTINE NIMMER, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br> v. <br><br> HUNTER WARFIELD OF NEW ENGLAND, INC., <br><br> Defendant. | Case No.: 18-cv-1859 <br><br> **CLASS ACTION COMPLAINT** <br><br> **Jury Trial Demanded** |

## INTRODUCTION

1. This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA") and the Wisconsin Consumer Act, Ch. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION AND VENUE

2. The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367. Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3. Plaintiff Kristine Nimmer is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4. Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family, or household purposes.

5. Plaintiff is a "customer" as defined in the WCA, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from consumer credit transaction, namely a consumer credit card account opened and used only for personal, family, or household purposes.

6. Defendant Hunter Warfield of New England, Inc. ("Hunter") is a foreign corporation with its principal place of business located at 4620 Woodland Corporate Boulevard, Tampa, FL 33614.

7. Hunter is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8. Hunter is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9. Hunter is a debt collector as defined in the FDCPA, 15 U.S.C. § 1692a.

10. Hunter is also a "debt collector" as defined by Wis. Stat. § 427.103(3), in that Hunter is directly engaged in the business of a collection agency, soliciting claims for collection and collecting such claims alleged to be owed or due a merchant by a customer.

11. Wis. Stat. § 427.103(3) defines debt collector as: "any person engaging, directly or indirectly, in debt collection, and includes any person who sells, or offers to sell, forms represented to be a collection system, device or scheme, intended or calculated to be used to collect claims. The term does not include a printing company engaging in the printing and sale of forms." (emphasis added).

12. Wis. Stat § 427.103(2) states: "Debt collection" means any action, conduct or practice of soliciting claims for collection or in the collection of claims owed or due or alleged to be owed or due a merchant by a customer."

2

13.     Hunter is licensed as a "Collection Agency" by the Division of Banking in the Wisconsin Department of Financial Institutions pursuant to Wis. Stat. § 218.04 and Wis. Admin. Code Ch. DFI-Bkg 74.

14.     Hunter is a debt collector as defined in Wis. Stat. § 427.103(3).

## FACTS

15.     On or about October 1, 2018 Hunter mailed a debt collection letter to Plaintiff regarding an alleged debt owed to "MIDWEST LIFESTYLES, LLC." A copy of this letter is attached to this Complaint as Exhibit A.

16.     Upon information and belief, the alleged debt referenced in Exhibit A was incurred by use of an open-end retail credit account, which was used exclusively for personal, family, or household purposes, namely, the purchase of household goods and services. *See* https://premierbridewisconsin.com/moreinfo/royal-prestige-midwest-lifestyles-llc-980.

17.     Upon information and belief, Exhibit A is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

18.     Upon information and belief, Exhibit A is a form debt collection letter used by Defendant to attempt to collect alleged debts.

19.     Exhibit A includes the following representations:

| | |
|---|---|
| CREDITOR | MIDWEST LIFESTYLES, LLC |
| CREDITOR ACCOUNT NUMBER | ▮1358 |
| DATE | 10/01/2018 |
| ACCOUNT NUMBER | ▮282 |
| PRINCIPAL | $3,309.52 |
| INTEREST | $483.73 |
| AMOUNT DUE | $3,793.25 |

3

20. <u>Exhibit A</u> thus indicates that Plaintiff's alleged debt is associated with a "CREDITOR ACCOUNT NUMBER" ending in 1358 and that the "CREDITOR" of Plaintiff's alleged debt is "MIDWEST LIFESTYLES, LLC."

21. Upon information and belief, "MIDWEST LIFESTYLES, LLC" is not the creditor of Plaintiff's alleged debt associated with an account ending in 1358.

22. Upon information and belief, the actual creditor of Plaintiff's alleged debt associated with an account ending in 1358 is Hy Cite Enterprises, LLC, d/b/a "Hy Cite Finance" ("HCE").

23. On or about October 26, 2015 HCE mailed an account statement to Plaintiff regarding the same account as referenced in <u>Exhibit A</u>, with an account number ending in 1358. A copy of this letter is attached to this Complaint as <u>Exhibit B</u>.

24. <u>Exhibit B</u> contains no reference to an entity by the name of "MIDWEST LIFESTYLES, LLC."

25. By listing "MIDWEST LIFESTYLES, LLC" as the "CREDITOR," <u>Exhibit A</u> is thus false, deceptive, and misleading as to the name of the creditor to whom Plaintiff's alleged debt is owed. *See, e.g., Berres v. Attention, LLC*, 05-cv-0311, 2006 U.S. Dist. LEXIS 67059, at *3 (E.D. Wis. Feb. 14, 2006) ("because plaintiff seeks to add a second count charging that American Honda Finance was the true creditor rather than Honda Primary Lease, which was named in the collection letter, the proposed amendment would **not** be futile.") (emphasis in original); *see also, Blarek v. Creditors Interchange*, No. 05-cv-1018, 2006 U.S. Dist. LEXIS 60595, at *3-4 (E.D. Wis. Aug. 25, 2006) (collecting cases and concluding that, "[g]enerally speaking, a FDCPA plaintiff states a claim when she alleges that the collection letter names the creditor in a manner that is unclear or confusing.").

26. Additionally, Exhibit B lists a "New Balance" of $3,379.71.

27. Exhibit B also indicates that it is a "FINAL NOTICE" and includes the following representation:

> Time is of the essence and this matter requires your immediate attention. If your account remains three payments past due at the end of this month it will be reported as a bad debt to the National Credit Reporting Agencies and the balance of your account may be turned over to a collection service to collect the balance on your account, plus all applicable fees. We trust you do not want to damage your credit beyond repair and that you would like to deal with one of our account representatives rather than a collection agency. Therefore, please call us immediately at 1 (800) 280-9709 to make arrangements to bring your account up to date.

28. Upon information and belief, HCE charged-off the account ending in 1358 on or around October 31, 2015.

29. Upon information and belief, HCE accelerated the balance of the account sometime between October 31, 2015 and when Hunter mailed Exhibit A. *See,* Exhibit B ("If your account remains three payments past due at the end of this month . . . the *balance* of your account may be turned over to a collection service to collect the *balance* on your account, plus all applicable fees.") (emphasis added).

30. Exhibit A also includes the following statement:

> If you fail to take advantage of this offer, interest will accrue making your payoff greater than the amount set forth above. Because of interest at the rate of 5.0%, late fees, or other charges that may vary from day to day, the amount due on the day you pay may be greater than the amount shown above. Hence, if you make payment more than 30 days after the date of this letter, an adjustment may be necessary after we receive your check, in which event we will inform you. Please contact our office for your payoff.

31. The statement that "because of interest at the rate of 5.0%, late fees, or other charges that may vary from day to day, the amount due on the day you pay may be greater" is a material representation that the creditor or debt collector may add late fees. *See, e.g., Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 368 (7th Cir. 2018).

32. Upon information and belief, the representation that the balance may increase as a result of "late fees, or other charges that may vary from day to day" is false.

33. Upon information and belief, Hunter does not add any "late fees, or other charges that may vary from day to day" to accounts such as Plaintiff's in the ordinary course of business.

5

34. Upon information and belief, HCE does not add any "late fees, or other charges that may vary from day to day" to accounts such as Plaintiff's in the ordinary course of business.

35. Upon information and belief, HCE does not direct Hunter to add any "late fees, or other charges that may vary from day to day" to accounts such as Plaintiff's in the ordinary course of business.

36. Upon information and belief, Hunter cannot add any "late fees, or other charges that may vary from day to day" to Plaintiff's account.

37. The WCA specifically prohibits the attachment of collection fees and other "default charges" on consumer credit transactions, even if the fee is separately negotiated.

38. Wis. Stat. § 422.413(1) provides:

> no term of a writing evidencing a consumer credit transaction may provide for any charges as a result of default by the customer other than reasonable expenses incurred in the disposition of collateral and such other charges as are specifically authorized by chs. 421 to 427.

*See also Patzka v. Viterbo College*, 917 F. Supp. 654, 659 (W.D. Wis. 1996).

39. Each transaction underlying Plaintiff's alleged debt constitutes a consumer credit transaction. Wis. Stat. § 421.301(10).

40. Neither Wis. Stat. § 422.202, entitled "Additional charges," nor any other section of the WCA, lists any permissible fees that Midwest Lifestyles or Hunter could charge in connection with a post-charge off credit card account.

41. Even if a provision of any agreement between Plaintiff and Midwest Lifestyles would purport to permit Hunter to impose a collection fee or other post-charge off fees or costs, the WCA prohibits such fees. Wis. Stat. § 421.106(1) ("Except as otherwise provided in chs. 421 to 427, a customer may not waive or agree to forego rights or benefits under chs. 421 to 427."); *Boucher*, 880 F.3d at 367 ("a dunning letter is false and misleading if it 'impl[ies] that

6

Case 2:18-cv-01859-NJ     Filed 11/26/18     Page 6 of 18     Document 1

certain outcomes might befall a delinquent debtor when, legally, those outcomes cannot come to pass.") (quoting *Lox v. CDA, Ltd.*, 689 F.3d. 818, 825 (7th Cir. 2012)).

42. Further, upon information and belief, HCE has accelerated the balance of the debt referenced in Exhibit A and cannot attempt to collect late fees as a matter of law after the debt has been accelerated and there are no monthly installment payments to become "due" unless the creditor actually reinstates the loan. *See, e.g., Rizzo v. Pierce & Assocs.*, 351 F.3d 791, 793 n.1 (7th Cir. 2003) (collecting cases); *see also, Rodriguez v. Codilis & Assocs., P.C.*, No. 17-cv-3656, 2018 U.S. Dist. LEXIS 54898, at *11-12 (N.D. Ill. Mar. 30, 2018) ("As Rodriguez points out, BSI cannot impose late charges for failure to make monthly payments after a loan has been accelerated.") (citing *Rizzo*, 351 F.3d at 793 n.1).

43. The statement in Exhibit A, that "because of interest, late charges, and other charges that may vary from day to day, the amount owed on the day you pay may be greater," is a materially false, deceptive, and misleading representation that the creditor, or the debt collector could, and would, attempt to collect these charges.

44. The statement in Exhibit A that "because of … late fees, or other charges that may vary from day to day, the amount due on the day you pay may be greater than the amount shown above," is a material representation that the creditor, or the debt collector, may impose "'late charges and other charges' under Wisconsin law." *Id.*

45. Furthermore, Exhibit A also includes the following statement:

**All States:** You are hereby notified that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. The collection agent assigned to your account may change from time to time. If you experience any difficulty finding the appropriate collection agent handling your account, contact the collection manager at 866-494-9902.

46. The unsophisticated consumer would understand the statement "a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to

7

fulfill the terms of your credit obligations" to be a representation that Hunter and/or the creditor would in fact report their alleged debt as delinquent to a credit reporting agency ("CRA") if they failed to tender payment as demanded by the collection letter, Exhibit A. *See, e.g.*, *Lox v. CDA, Ltd.*, 689 F.3d 818, 825 (7th Cir. 2012) (citing *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1063 (9th Cir. 2011)); *Cooper v. Retrieval-Masters Credit Bureau, Inc.*, 2017 U.S. Dist. LEXIS 84693, *7, 2017 WL 2404952 (N.D. Ill. June 2, 2017).

47. Similarly, the unsophisticated consumer would understand the statement "a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations" be a representation that Hunter and/or the creditor had not yet reported their alleged debt as delinquent to any CRA and that such a negative credit report could be avoided if they tendered payment as demanded by the collection letter, Exhibit A. *See, e.g.*, *Johnson v. Enhanced Recovery Co., LLC*, 228 F. Supp. 3d 870 (N.D. Ind. 2017).

48. Upon information and belief, Plaintiff's alleged debt had already been reported as delinquent to one or more CRAs prior to October 1, 2018. *See*, Exhibit B ("If your account remains three payments due at the end of this month it will be reported as a bad debt to the National Credit Reporting Agencies . . . .").

49. Thus, the statement that "a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations" is false, deceptive, and misleading because it misrepresents both that Hunter and/or the original credit would report Plaintiff's alleged debt to CRAs and that no such report had been made as of the time Hunter's letter, Exhibit A, had been sent.

8

50. False, deceptive, and misleading representations regarding credit reporting are material misrepresentations, and Defendant falsely represented that Plaintiff could avoid having a negative item on her credit report by settling the debt pursuant to the offer in Exhibit A:

> Credit reports matter, and damage to one's report can occur in a moment but take a decade or more to repair. Johnson's claim is that a consumer would think ERC's letter was an offer to let her avoid a black mark on her credit by paying a reduced debt amount, which may be in reach while the original debt wasn't. If Johnson is correct about how the unsophisticated consumer would interpret ERC's letter, the statements are certainly material. Consumers with debts in collection are generally people doing their best in the face of a tough situation that requires them to make difficult choices. "[T]here is universal agreement among scholars, law enforcement officials, and even debt collectors that the number of persons who willfully refuse to pay just debts is minuscule. The vast majority of consumers who obtain credit fully intend to repay their debts." By offering (or appearing to offer) a consumer a way to keep one delinquency off her credit report, a debt collector might get itself bumped to the top of her list of payments to make. That makes the offer material…

*Johnson*, 228 F. Supp. 3d at 878 (internal citations omitted).

51. Plaintiff was confused and misled by Exhibit A.

52. The unsophisticated consumer would be confused and misled by Exhibit A.

53. Plaintiff had to spend time and money investigating Exhibit A, and the consequences of any potential responses to Exhibit A.

### *The FDCPA*

54. The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'"), *quoting Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3

9

(E.D. Wis. June 12, 2017); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL

10

1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

55. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

56. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

57. 15 U.S.C. § 1692e(2)(a) specifically prohibits "The false representation of— the character, amount, or legal status of any debt.

58. 15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

59. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

60. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

61. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

### *The WCA*

62. The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

63. The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 n.15, 596 N.W.2d 786 (1999) (citations omitted).

64. To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

65. "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

66. To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

12

67. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

68. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

69. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

70. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer or a person related to the customer with such frequency of at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."

71. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct . . . in such a manner as can reasonably be expected to threaten or harass the customer."

72. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

13

73. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

74. The Wisconsin Department of Financial Institutions, which is tasked with regulating licensed collection agencies, has found that "conduct which violates the Federal Fair Debt Collection Practices Act" can reasonably be expected to threaten or harass the customer. *See* Wis. Admin. Code DFI-Bkg 74.16(9) ("Oppressive and deceptive practices prohibited.").

## **COUNT I – FDCPA**

75. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

76. By indicating that the "CREDITOR" of Plaintiff's alleged debt as "MIDWEST LIFESTYLES, LLC," Exhibit A is false, deceptive, and misleading as to the actual creditor to whom Plaintiff's alleged debt is owed.

77. Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(2)(A), and 1692e(10).

## **COUNT II – FDCPA**

78. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

79. By stating "[b]ecause of interest at the rate of 5.0%, late fees, or other charges that may vary from day to day, the amount due on the date you pay may be greater than the amount shown above," Exhibit A falsely threatens to impose late fees and collection charges which Hunter did not intend to impose, does not impose in the ordinary course of business, and lacked the legal authority to impose under Wisconsin law.

80. Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(5), 1692e(10), 1692f, and 1692f(1).

## COUNT III – FDCPA

81. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

82. By stating "a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations" Exhibit A is false, deceptive, and misleading because it misrepresents both that Hunter and/or the original credit would report Plaintiff's alleged debt to CRAs

83. By stating "a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations" Exhibit A is also false, deceptive, and misleading and that no such report had been made as of the time Hunter's letter had been sent.

84. Defendant thereby violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), and 1692f.

## COUNT IV -- WCA

85. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

86. By stating "[b]ecause of interest at the rate of 5.0%, late fees, or other charges that may vary from day to day, the amount due on the date you pay may be greater than the amount shown above," Exhibit A falsely threatens to impose late fees and collection charges which Hunter did not intend to impose, does not impose in the ordinary course of business, and lacked the legal authority to impose under Wisconsin law.

87. By stating "a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations" Exhibit A falsely threatens to take an action which Hunter did not intend to take and does not impose in the ordinary course of business.

88. Defendant thereby violated Wis. Stat. § 427.104(1)(j).

## CLASS ALLEGATIONS

89. Plaintiff brings this action on behalf of four Classes.

90. Class I consists of (a) all natural persons in the United States of America, (b) who were sent collection letters in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) between November 26, 2017 and November 26, 2018, inclusive, (e) that was not returned by the postal service.

91. Class II consists of (a) all natural persons in the State of Wisconsin, (b) who were sent collection letters in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) between November 26 2017 and November 26, 2018, inclusive, (e) that was not returned by the postal service.

92. Class III consists of (a) all natural persons in the United States of America, (b) who were sent collection letters in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) which list the "CREDITOR" as "MIDWEST LIFESTYLES, LLC," (e) between November 26, 2017 and November 26, 2018, inclusive, (f) that was not returned by the postal service.

16

Case 2:18-cv-01859-NJ    Filed 11/26/18    Page 16 of 18    Document 1

93. Class IV consists of (a) all natural persons in the State of Wisconsin, (b) who were sent collection letters in the form represented by Exhibit A to the complaint in this action, (c) seeking to collect a debt, incurred for personal, family, or household purposes, (d) which list the "CREDITOR" as "MIDWEST LIFESTYLES, LLC," (e) between November 26, 2017 and November 26, 2018, inclusive, (f) that was not returned by the postal service.

94. Each Class is so numerous that joinder is impracticable. Upon information and belief, there are more than 50 members of each Class.

95. There are questions of law and fact common to the members of the class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibit A and/or Exhibit B violate the FDCPA.

96. Plaintiff's claims are typical of the claims of the Class members. All are based on the same factual and legal theories.

97. Plaintiff will fairly and adequately represent the interests of the Class members. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

98. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

99. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

17

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: November 26, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)
Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com